## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Jay Meilstrup, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANTS'** |
| vs. | ) | **MOTION TO DISMISS** |
| | ) | |
| Standing Rock Sioux Tribe, | ) | Case No. 1:25-cv-162 |
| Standing Rock Tribal Council, | ) | |
| and Ryan Hertle, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants' motion to dismiss filed on August 8, 2025. See Doc. No. 4. The Plaintiff filed a response in opposition to the motion on September 6, 2025. See Doc. No. 10. The Defendants filed a reply on September 19, 2025. See Doc. No. 15. For the reasons set forth below, the motion is granted in part and denied in part.

## I.   BACKGROUND

Jay Meilstrup is a former employee of Standing Rock Sioux Tribe ("the Tribe"). He began working at Prairie Knights Casino as the Chief Executive Officer/General Manager pursuant to an employment contract dated October 21, 2024. Prairie Knights Casino is owned by the Tribe. Under the employment contract Meilstrup was entitled to health insurance and was approved for coverage by the Tribe.

On February 27, 2025, Meilstrup's wife was admitted to the hospital in Pennsylvania, for cancer treatment. On February 28, 2025, Meilstrup met with the Tribe's Director of Human Resources, Wes Long Feather, to discuss options for taking leave. Long Feather agreed to change Meilstrup's status to "unpaid leave" pending further determination of his wife's diagnosis. That

1

same day Meilstrup also met with the Tribe's Vice Chair, Frank Jamerson, to discuss the situation. Jamerson confirmed the unpaid leave status. Thereafter, Meilstrup went to Pennsylvania.

On March 3, 2025, Meilstrup emailed Jamerson and Charles Walker. Walker is the Chairman of the Judicial Committee and is the Executive Committee Member and Casino Liaison of the Standing Rock Tribal Council ("the Tribal Council"). Meilstrup requested unpaid leave until his wife completed tests, evaluations, and procedures. Walker notified Meilstrup by email that his leave was approved until April 1, 2025.

On March 25, 2025, Jamerson notified Meilstrup that the Tribal Council planned to vote on the termination of Meilstrup's employment contract for his violation of attendance polices. Meilstrup explained that Walker approved the leave in an email that Jamerson was copied on. Jamerson informed Meilstrup that the Tribal Council believed Walker did not have the authority to approve the leave.

On March 28, 2025, Meilstrup requested an update from Jamerson and Walker regarding the outcome of the vote, but did not receive a response. On April 1, 2025, after contacting Jamerson again, Meilstrup was told he would receive a status update after Jamerson received a signed decision from the Chairwoman. On April 2, 2025, the Tribe's legal representative emailed Meilstrup a letter regarding the vote. The letter stated that the Tribal Council voted to terminate Meilstrup's employment contract "for cause" due to Meilstrup's breach of contract for failure to follow tribal policies. Meilstrup alleges he was never provided the polices. The letter informed Meilstrup that he would be eligible for Consolidated Omnibus Budget Reconciliation Act ("COBRA") coverage and included an informational sheet that explained the cost of COBRA coverage.

On April 7, 2025, Meilstrup and his wife were at the hospital for surgical procedures related to his wife's cancer treatment when hospital staff informed them that Meilstrup's health insurance was terminated on March 31, 2025. The cancellation of health insurance caused his wife's procedure to be postponed. Meilstrup contacted Human Resource Director Long Feather, who informed Meilstrup that his health insurance coverage ended in March due to Meilstrup's termination. According to Long Feather, the Tribal Council voted to cancel Meilstrup's employment contract on March 25, 2025, though Meilstrup was not notified of the termination until April 2, 2025.

Meilstrup contacted a Paycom COBRA representative on April 14, 2025, to sign up for COBRA coverage. Paycom is the human resource benefits processor for Prairie Knights Casino. On May 7, 2025, Meilstrup was notified that his COBRA coverage was denied. Paycom informed Meilstrup that he was denied coverage because he was terminated for "gross misconduct." The reason for termination was inconsistent with the letter of termination from the Tribal Chair that stated "breach of contract" as the reason for termination. According to the complaint, Meilstrup was unable to secure health insurance until June 1, 2025. Meilstrup alleges the Tribe's actions in misrepresenting and mishandling his termination caused delays and disruptions to his wife's medical care.

On July 8, 2025, Meilstrup initiated this action against Standing Rock Sioux Tribe, Standing Rock Tribal Council, and Ryan Hertle, the Chief Financial Officer of Prairie Knights Casino and the COBRA insurance plan administrator. The complaint contains a claim to recover benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. He also brings common law claims including breach of contract, bad faith refusal to carry out a contract, and malicious representation of material facts. On August 8, 2025, the

3

Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The motion has been fully briefed and is ripe for disposition.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the court to resolve prior to trial. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). The Plaintiff bears the burden to prove subject matter jurisdiction exists. Herden v. United States, 726 F.3d 1042, 1046 (8th Cir. 2013).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." Osborn, 918 F.2d at 729 n.6. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (internal citation omitted). If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the Court will treat the motion as a facial attack and afford the Plaintiff, the non-moving party, all the protections afforded by Rule 12(b)(6). The Court will consider only the

complaint and the exhibits attached to the complaint. See Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (discussing a facial attack).

## III.    LEGAL ANALYSIS

Meilstrup brings this action to enforce his rights under ERISA as authorized by 29 U.S.C. § 1132(a)(1)(B). He also brings claims for "independent torts and breach of contract" asserting the Court has supplemental jurisdiction under 28 U.S.C. § 1367. See Doc. No. 1, p. 2. The Defendants contend the Court lacks subject matter jurisdiction over the Plaintiff's claims because the claims should have been brought in Tribal Court, and the Tribe did not waive sovereign immunity in this Court. The Defendants also argue the Plaintiff failed to state a claim upon which relief can be granted. The Plaintiff maintains the Court has subject matter jurisdiction and he properly pled an ERISA claim and common law claims.

29 U.S.C. § 1132(a)(1)(B) allows a participant or a beneficiary of an ERISA plan to bring a civil action to "recover benefits due to him under the terms of his plan." Further, participants or beneficiaries are entitled to bring a civil action to obtain "appropriate equitable relief" to redress ERISA violations. 29 U.S.C. § 1132(a)(3). The terms of the plan govern a claim for benefits under Section 1132(a)(1)(B). Powell v. Minnesota Life Ins. Co., 60 F.4th 1119, 1122 (8th Cir. 2023). "Courts are instructed to enforce the terms of ERISA plans as they are written." Vercellino v. Optum Insight, Inc., 26 F.4th 464, 469 (8th Cir 2022); see also Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 300 (2009) (explaining the terms of an ERISA plan govern the payment of benefits).

As a preliminary matter, the Court first addresses the Defendants' contention that Meilstrup did not plead an ERISA claim. In their reply brief, the Defendants argue Meilstrup failed to state

facts supporting an ERISA claim. <u>See</u> Doc. No. 15, p. 11-12. The complaint alleges the

Defendants' violated their obligations under ERISA. The complaint alleges that the Defendants

improperly canceled Meilstrup's health insurance coverage prior to his notice of termination and

denied COBRA coverage that he was entitled to following his termination. Meilstrup alleges that

he incurred medical bills and his wife's cancer treatment was significantly disrupted and delayed.

At this early stage of the case, the Court finds Meilstrup has pled sufficient facts in his complaint

to support an ERISA claim.

### A.    <u>ERISA CLAIM</u>

Under 29 U.S.C. § 1003, governmental plans are exempt from ERISA coverage. <u>See</u> 29

U.S.C. § 1003(b)(1). In 2006, Congress amended ERISA to exclude some tribal benefit plans from

ERISA as governmental plans. Section 1002(32) defines a governmental plan in relevant part as

follows:

> The term "governmental plan" includes a plan which is established and maintained
> by an Indian tribal government … a subdivision of an Indian tribal government …
> or an agency or instrumentality of either, and all of the participants of which are
> employees of such entity substantially all of whose services as such an employee
> are in the performance of essential governmental functions but not in the
> performance of commercial activities (whether or not an essential government
> function).

Here, Meilstrup worked as the Chief Executive Officer/General Manager of Prairie Knights

Casino. The casino is unequivocally a commercial activity. <u>See</u> <u>Coppe v. Sac & Fox Casino</u>

<u>Healthcare Plan</u> ("Coppe II"), No. 2:14-CV-02598-GLR, 2015 WL 6806540, *4 (D. Kan. Nov. 5,

2015) (holding a casino is unquestionably a commercial enterprise). The Defendants do not

contend the casino constitutes an essential government function. Accordingly, the Court concludes

ERISA applies to Meilstrup's health insurance plan.

1.     **WAIVER OF SOVEREIGN IMMUNITY**

The Defendants argue Meilstrup did not plead a waiver of sovereign immunity. In the Eighth Circuit, sovereign immunity presents a jurisdictional question. Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 4043 (8th Cir. 2000).  It has long been recognized that Indian tribes possess "common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59 (1978).  Indian tribes may not be sued absent an express and unequivocal waiver of immunity by the tribe or "abrogation of tribal immunity by Congress."  Baker Elec. Coop. v. Chaske, 58 F.3d 1466, 1471 (8th Cir. 1994).  A tribe's sovereign immunity extends to tribal officers or agencies. Hagen, 205 F.3d at 1043 (citing Dillon v. Yankton Sioux Tribe Housing Auth., 144 F.3d 581, 583 (8th Cir. 1998)).

The Court in *Coppe II*, addressed whether Congress has abrogated tribal immunity as to ERISA claims. Coppe v. Sac & Fox Casino Healthcare Plan, No. 2:14-CV-02598-GLR, 2015 WL 6806540, (D. Kan. Nov. 5, 2015). The Court concluded, "[t]he statutory language, Congressional intent, and case precedent all support the contention that ERISA applies to employee benefit plans such as this one." Id. at *3. Relying on the 2006 amendment that specified the applicability of ERISA to tribal plans, the court held that "[t]he statutory language of ERISA in [29 U.S.C. § 1002(32)] demonstrates that Congress specifically intended for Indian tribes to maintain sovereign immunity for some employee benefit plans and to abrogate it for others." Similarly, the court in *Vandever v. Osage Nation Enter., Inc.*, No. 06-CV-380-GKF-TLW, 2009 WL 702776, *4 (N.D. Okla. Mar. 16, 2009) concluded "the amended language of § 1002(32) makes clear that Congress has abrogated sovereign immunity of the tribes with respect to certain ERISA plans." See also Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC, No. C19-1758-JCC-SKV, 2022 WL 18999836 (W.D. Wash. Dec. 29, 2022), report and recommendation adopted, No. C19-1758-

JCC-SKV, 2023 WL 2042174 (W.D. Wash. Feb. 16, 2023) (concluding that by operating a non-governmental health plan the tribe waived its sovereign immunity with respect to enforcement of that plan).

The Court agrees that Congress' 2006 amendments to ERISA constitute an unequivocal waiver of sovereign immunity for tribal employee plans that perform commercial functions. ERISA is applicable to Meilstrup's health insurance plan because the casino performs a commercial function. Therefore, the Court concludes as a matter of law that the Defendants' operation of a non-governmental plan waived their sovereign immunity as to Meilstrup's ERISA claim.

## 2.    <u>TRIBAL COURT JURISDICTION OVER ERISA CLAIMS</u>

The Defendants argue Meilstrup must bring his ERISA claim in the first instance in tribal court under the tribal exhaustion doctrine.  The Defendants also argue that Meilstrup's claim must be brought in tribal court because the employment contract provides that tribal law governs. First, the Court notes that a claim under ERISA is a federal cause of action that may brought in federal court. The claim does not arise from the employment contract. Consequently, the employment contract does not govern jurisdiction of Meilstrup's ERISA claim. The Court separately addresses the Plaintiff's common law claims arising out of the contract below. Second, as discussed below tribal courts do not have judication over ERISA claims. As such, jurisdiction over Meilstrup's ERISA claim lies with this Court.

Under 29 U.S.C. § 1132(e)(1), which governs jurisdiction of ERISA claims, "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section." While ERISA's plain

language provides for concurrent state and federal jurisdiction, it does not reference tribal court jurisdiction.

Tribal courts are not courts of general jurisdiction. Nevada v. Hicks, 533 U.S. 353 (2001). "[A] tribe's inherent adjudicative jurisdiction over nonmembers is at most only as broad as its legislative jurisdiction." Id. at 367. In *Nevada*, the United States Supreme Court held that a tribal court does not have judication over an action under 42 U.S.C. § 1983 against a nonmember state law enforcement agent for actions taken upon reservation land to investigate an off-reservation crime. Although some statutes, such as the Indican Child Welfare Act, "proclaim tribal-court jurisdiction over certain questions of federal law … no provision in federal law provides for tribal-court jurisdiction over § 1983 actions." Id. at 367-68. Similarly, Congress has not granted tribal courts jurisdiction over ERISA claims. Further, in *Nevada*, the Supreme Court held that permitting tribal court jurisdiction would "create serious anomalies" because the general federal-question removal statute, 28 U.S.C. § 1441, refers only to removal from state court. If Section 1983 claims were cognizable in tribal court, defendants would lack the right to seek a federal forum. In *Coppe v. Sac & Fox Casino Healthcare Plan* ("Coppe I"), No. 14-2598-RDR, 2015 WL 1137733, *3 (D. Kan. Mar. 13, 2015), when concluding tribal courts do not have jurisdiction over ERISA claims, the court noted that the same anomaly discussed in *Nevada* would be present if tribal courts had judication over ERISA claims. "The power of an ERISA defendant to remove the action to federal court, as exists for state court ERISA defendants, would not be present. And, the right of an ERISA plaintiff to choose a federal forum at the outset of an action would be infringed." Id.

Several federal district courts have concluded federal courts should not defer to a tribal court to adjudicate ERISA claims. Recently, the United States District Court for the District of South Dakota determined Congress intended for federal courts, and not tribal courts, to have

9

jurisdiction over ERISA claims. Metro. Life Ins. Co. v. Mundahl, No. 3:24-CV-03029-RAL, 2025 WL 2682509 (D.S.D. Sept. 19, 2025). ERISA vests exclusive jurisdiction with federal district courts for certain claims and vests state courts and federal courts with concurrent jurisdiction over other claims. However, ERISA does not vest jurisdiction in tribal courts. Nothing in the text of ERISA suggests that tribes have concurrent jurisdiction under Section 1132(e). The court in *Metropolitan* noted that "Congress passed ERISA to safeguard the interests of participants in employee benefit plans and their beneficiaries' through regulatory requirements and provide for appropriate remedies, sanctions, and ready access to the Federal courts." Id. at *5 (internal quotations and citations removed). "ERISA has an expansive federal preemption provision in 29 U.S.C. § 1144, which is intended to ensure that employee benefit plan regulation would be exclusively a federal concern." The court concluded that allowing a tribal court to adjudicate an ERISA claim would defeat the congressional intent to provide a federal forum, either through original jurisdiction or removal, for all ERISA claims.

In *Peabody Holding Co., LLC v. Black*, No. CV-12-08252-PCT-DGC, 2013 WL 2370620 (D. Ariz. May 29, 2013), the court concluded that tribal courts lack jurisdiction over ERISA claims because Congress did not grant jurisdiction in 29 U.S.C. § 1132(e)(1). Additionally, an exception to the exhaustion doctrine outlined in *National Farmers* applied. Under *National Farmers*, exhaustion of tribal remedies is not required when "the action is patently violative of express jurisdictional prohibitions." Nat'l Farmers Union Ins., 471 at 857, n. 21. In *Peabody*, the court concluded tribal court jurisdiction over an ERISA claim would patently violate an express jurisdictional prohibition because 29 U.S.C. § 1132(e)(1) "confers exclusive jurisdiction on the federal courts, making plain that the tribal court lacks jurisdiction." Peabody, 2013 WL 2370620 at *4 (internal quotation marks omitted); see also Coppe v. Sac & Fox Casino Healthcare Plan,

No. 14-2598-RDR, 2015 WL 1137733 (D. Kan. Mar. 13, 2015) (concluding it is clear that tribal courts lack jurisdiction over ERISA claims because "Congress has not purported to grant tribal courts jurisdiction over ERISA claims.")

The Court finds these cases to be instructive. Under 29 U.S.C. § 1132(e)(1) federal courts and state courts have jurisdiction over ERISA claims under Section 1132(a)(1)(B). Congress has not granted tribal courts jurisdiction over ERISA claims. Accordingly, the Court concludes as a matter of law that the Tribal Court does not have jurisdiction over Meilstrup's ERISA claim. The Defendants' motion to dismiss Meilstrup's ERISA claim must be denied.


B.       **COMMON LAW CLAIMS**

Meilstrup also brings common law claims in addition to his ERISA claim. Meilstrup alleges the Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367. Similar to the Meilstrup's ERISA claims, the Defendants argue the common law claims should be dismissed because Meilstrup has not pled a waiver of sovereign immunity and because the tribal court has jurisdiction over his claims.

The Court agrees that Meilstrup has not pled a waiver of sovereign immunity as to his common law claims. The Eighth Circuit Court of Appeals summarized the principle of tribal sovereign immunity in *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680 (8th Cir. 2011).

> [T]ribal sovereign immunity is a threshold jurisdictional question. Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. Thus, [a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. A waiver of sovereign immunity may not be implied, but must be unequivocally expressed by either the Tribe or Congress.

Id. at 684-85 (internal quotation marks and citations omitted). "The plaintiffs bear the burden of proving that either Congress or [the tribe] has expressly and unequivocally waived tribal sovereign immunity." Id. at 685-86.

Meilstrup did not address a waiver of sovereign immunity in his response in opposition to the motion to dismiss. Meilstrup did not plead any facts in support of a waiver of the Tribe's sovereign immunity in his complaint. Meilstrup does not allege that the Tribe waived its sovereign immunity as to the common law claims brought in this Court. Nor does he argue that Congress abrogated tribal sovereign immunity as to any common law claims he brings.

The employment contract between Meilstrup and the Tribe contains a limited waiver of sovereign immunity, which provides that "this waiver is expressly limited to the adjudication of lawsuits before Standing Rock Sioux Tribal Court pursuant to the agreement of the parties to this Contract with regard to jurisdiction." See Doc. No. 4-1, p. 8. The waiver is also limited to the recovery of "no more than the amount of this Contract." Id. The Tribe's waiver of sovereign immunity is plainly only applicable to claims brought in tribal court. It does not waive the Tribe's sovereign immunity as to Meilstrup's claims in this Court. Accordingly, Meilstrup failed to meet his burden of pleading a clear, unequivocal waiver of the Tribe's sovereign immunity. As a result, Meilstrup's common law claims must be dismissed.

Additionally, the common law claims must be dismissed because the Tribal Court has jurisdiction under *Montana v. United States*, 450 U.S. 544 (1981). In *Montana*, the United States Supreme Court articulated the general rule that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe," absent express congressional delegation. Montana, 450 U.S. at 565. The Supreme Court then outlined two exceptions to this general rule when tribal jurisdiction may extend to nonmembers:

12

      1) "A tribe may regulate, through taxation, licensing, or other means, the activities of

nonmembers who enter consensual relationships with the tribe or its members, through

commercial dealing, contracts, leases, or other arrangements[,]" and

      2) "A tribe may also retain inherent power to exercise civil authority over the conduct of

non-Indians on fee lands within its reservation when that conduct threatens or has some

direct effect on the political integrity, the economic security, or the health or welfare of the

tribe."

Id. at 565-66. "The *Montana* exceptions are rooted in the tribes' inherent power to protect certain

sovereign interests" which includes "the right of Indian tribes to make their own laws and be

governed by them, and in accordance with that right tribes may regulate nonmember behavior that

implicates tribal governance and internal relations." Attorney's Process & Investigation Servs.,

Inc. v. Sac & Fox Tribe of Mississippi in Iowa, 609 F.3d 927, 936 (8th Cir. 2010).

      The first *Montana* exception applies in this case. The consensual relationship exception

applies to "private individuals who voluntarily submitted themselves to tribal regulatory

jurisdiction by the arrangements that they (or their employers) entered into." Nevada, 533 U.S. at

372. It is undisputed that Meilstrup entered into an employment contract with the Tribe on the

reservation. Pursuant to that contract Meilstrup performed senior management services for the

Tribe's casino for several months. This plainly constitutes a consensual relationship with the Tribe.

      Further, the employment contract specifically provides for tribal court judication for claims

arising out of the contract, which includes Meilstrup's common law claims. The contract provides

that "[t]his Contract shall be interpreted, construed, and governed in accordance with the laws of

the Standing Rock Sioux Tribe … Employee consents to the exclusive jurisdiction of the Standing

Rock Sioux Tribal Court for any cause of action arising out of or relating to this Contract, or any

13

other cause of action pertaining to Employee's employment as General Manager of the Casino."

<u>See</u> Doc. No. 4-1, p. 6-7. Meilstrup entered into a consensual relationship with the Tribe and consented to the Tribe's jurisdiction for common law claims arising out of the contract. Therefore, dismissal of Meilstrup's common law claims is warranted. Because Meilstrup's claims must be dismissed for the reasons outlined above, the Court need not address ERISA's preemption doctrine as it applies to common law claims.

## IV.  CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Plaintiff's claim under ERISA will go forward while all other claims are dismissed for lack of subject matter jurisdiction. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the Defendant's motion to dismiss (Doc. No. 4). The Defendants' motion for hearing (Doc. No. 12) is **DENIED**. In addition, the Court orders the parties into an early settlement conference before a Magistrate Judge in this district.

**IT IS SO ORDERED.**

Dated this 9th day of October, 2025.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court